# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

TERRY RONDBERG, D.C. and THE CHIROPRACTIC JOURNAL AND JOURNAL OF VERTEBRAL SUBLUXATION,

Plaintiffs,

vs.

MATHEW MCCOY a.k.a. MATT MCCOY a.k.a. DR. MATT MCCOY and DOES 1 to 100, inclusive,

Defendants.

CASE NO. 09-CV-1672-H (CAB)

**ORDER GRANTING DEFENDANT MCCOY'S MOTION TO DISMISS WITH LEAVE TO AMEND**

On March 4, 2009, Plaintiffs Terry Rondberg, D.C. and the Chiropractic Journal and Journal of Vertebral Subfluxation filed their First Amended Complaint ("FAC") against Defendants Mathew[1] McCoy and Does 1 through 100 in the San Diego Superior Court. (Doc. No. 1.) The FAC alleged seventeen causes of action: (1) breach of contract, (2) RICO violations, (3) violations of Cal. Bus. & Prof. Code § 17200 et seq., (4) conversion and misappropriation of funds, (5) breach of fiduciary duty, (6) fraud, (7) negligent misrepresentation, (8) accounting, (9) money had and received, (10) libel, (11) slander, (12) invasion of privacy, (13) violation of statutory and common law unfair competition by

---

[1] The Court notes that although Defendant McCoy's first name appears as "Mathew" on the Plaintiffs' FAC, the Defendants spell it as "Matthew" in their pleadings.

infringement of common-law trademark rights, unfair and deceptive conduct, (14) false designation, (15) dilution, (16) intentional interference with business relationships, and (17) negligent interference with business relationships. (Id.) On August 3, 2009, Defendant McCoy removed the action to this Court pursuant to 28 U.S.C. § 1441(b), because this Court has original jurisdiction over the RICO violation claim.[2] (Id.) On August 10, 2009, Defendants filed a motion to dismiss the FAC pursuant to the Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for a more definite statement of the claims pursuant to the Federal Rule of Civil Procedure 12(e). (Doc. No. 3.) Plaintiffs filed a response in opposition on September 4, 2009. (Doc. No. 5.) Defendants filed their reply to Plaintiffs' opposition on September 14, 2009. (Doc. No. 6.) For the following reasons, the Court GRANTS Defendants' motion to dismiss Plaintiffs' FAC.

**Background**

Plaintiffs allege that Defendant Terry Rondberg, D.C. ("Rondberg") and Cynthia Rondberg are owners and sole shareholders of The Chiropractic Journal, Inc. (FAC ¶ 12.) Plaintiffs allege that Rondberg founded the Journal of Vertebral Subluxation Research ("JVSR"), a peer-reviewed scientific journal. (FAC ¶¶ 14-15.) Plaintiffs allege that JVSR operated a website, www.jvsr.com, and received revenue from advertising on the internet and through its publications. (Id.) Plaintiffs allege that on or about April 1, 2000, JVSR, through Rondberg, "engaged Defendant, Matthew McCoy, D.C. to act as the JVSR editor." (FAC ¶ 18.)

Plaintiffs further allege that JVSR's revenue from credit card merchant accounts was processed through the Chiropractic Journal until on or about until April 24, 2006, when Defendant McCoy ("McCoy") reorganized the merchant account to direct charges to JSVR, as part of a scheme to divert JSVR property and money for McCoy's personal benefit. (Id. ¶¶ 22-23.) Plaintiffs allege that since mid-2008, McCoy assumed control of the JSVR's operations and engaged in a "series of unauthorized, un-consented and illegal actions,"

---

[2] Additionally, Defendant claims that this Court has original jurisdiction based on diversity, 28 U.S.C. § 1332. (Doc. No. 1 at 2.)

including: changing the registration of the JVSR's domain name to himself, "absconding and diverting funds of JVSR" for his personal benefit, excluding the Chiropractic Journal and Rondberg from JVSR operations, falsely disseminating statements that McCoy is the owner of JVSR, undermining the operation of JVSR, promoting and operating own projects and business entities on JVSR's website, blocking the Chiropractic Journal and Rondberg from accessing JVSR's books, records, and bank accounts, holding oneself out as the owner/sole director/officer of JVSR, contacting JVSR customers to divert them to bank accounts established by McCoy, abetting unnamed co-conspirators to carry out a common plan to defraud Plaintiffs, engaging in a campaign to disparage and destroy Rondberg and diminish his reputation in the chiropractic community, establishing an enterprise calculated to engage in illegal conduct, including mail fraud and embezzlement, to the detriment of the Plaintiffs, intentionally publishing false statements, private facts and disparaging comments concerning Plaintiffs. (FAC at 6-7.)

Plaintiffs allege that McCoy engaged in malicious and illegal conduct to undermine Plaintiffs' operations and affiliations within the chiropractic community, misappropriated JVSR's trade secrets and customer lists for his own use, and engaged in competitive conduct against JVSR and Plaintiffs. (Id. at 7.) Plaintiffs allege that McCoy hijacked JVSR's website, internet operations, merchant accounts, and internet-related operations. (Id.) Plaintiffs allege that McCoy used JVSR's resources to operate a personal business known as "Glass Houses." (Id.) Plaintiffs allege that McCoy intentionally disseminated false, offensive, private and confidential information and statements in order to cast Plaintiffs in a false light. (Id.)

Plaintiffs allege that since approximately December 2008, McCoy and Does 1 through 50 engaged in a pattern and scheme to embezzle and convert the funds and property of JVSR and the Chiropractic Journal. (Id.) Finally, Plaintiffs allege that they have suffered damages in an amount to be determined, but believed to be in excess of $1 million, as a result of McCoy's and Does' 1 through 50, common plan, scheme, defamation, and illegal conduct. (Id. at 8.)

///

## Discussion

**I. Motion to Dismiss Pursuant to 12(b)(6)**

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Navarro v. Black, 250 F.3d 729, 731 (9th Cir. 2001). A complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) to evade dismissal under a Rule 12(b)(6) motion. Porter v. Jones, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) requires that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of this pleading requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting id. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36 (3d ed. 2004)). "All allegations of material fact are taken as true and construed in the light most favorable to plaintiff. However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." Epstein v. Wash. Energy Co., 83 F.3d 1136, 1140 (9th Cir.1996); see also Twombly, 127 S.Ct. at 1964–65.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir.1990). The court may, however, consider the contents of documents specifically referred to and incorporated into the complaint. Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir.1994).

**A. Breach of Contract, Breach of Fiduciary Duty and Accounting**

Plaintiffs' first cause of action is for breach of contract. In a breach of contract claim under California law, a plaintiff must allege (1) a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages. McDonald v. John P. Scripps Newspaper, 210 Cal.App.3d 100, 104 (1989).

Plaintiffs' fifth cause of action is for breach of fiduciary duty. The elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) its breach, and (3) damage proximately caused by that breach. Amtower v. Photon Dynamics, Inc., 158 Cal. App.4th 1582, 1599 (2008). "Whether a fiduciary duty exists is generally a question of law." Id. (citation omitted). "Whether the defendant breached that duty towards the plaintiff is a question of fact." Id. (citation omitted).

Plaintiffs' eighth cause of action is for accounting. (FAC ¶¶ 76-79.) To state a claim for accounting under California law, a plaintiff must allege a fiduciary relationship or other circumstances appropriate to the remedy and a balance due from the defendant to the plaintiff that can only be ascertained by an accounting. See Glue-Fold, Inc. v. Slautterback Corp., 82 Cal.App.4th 1018, 1023 n.3 (2000); 5 Witkin, Cal. Proc. (4th ed. 1997) Pleading, §§ 775-77, pp. 233-35.

Plaintiffs do not allege the existence of a contract, only that Plaintiffs engaged McCoy "to act as the JVSR editor." (FAC ¶18.) Plaintiffs do not allege facts giving rise to any duty between the parties. Instead, Plaintiffs make a conclusory allegation that because McCoy had a duty to manage JVSR, he was required to act as a fiduciary to Plaintiffs. (FAC ¶ 78.) Likewise, Plaintiffs have not established the elements of the claim for breach of fiduciary duty. Plaintiffs only make legally conclusory allegations that McCoy materially breached agreements attached to the complaint as exhibits. (Id. ¶¶ 30-31.) However, Plaintiffs did not attach any agreements to the FAC and do not enhance their allegations concerning the alleged agreements with facts that make their allegations plausible. The Court concludes that Plaintiffs fail to state claims for breach of contract, breach of fiduciary duty, and accounting.

Accordingly, the Court GRANTS Defendant McCoy's motion to dismiss Plaintiffs'

first, fifth and eighth causes of action as Plaintiffs fail to allege essential elements.

**B. RICO**

Plaintiffs allege that McCoy, "acting in unison with other and on behalf of the other co-venturing Defendants," violated 18 U.S.C. § 1962. (FAC ¶ 35.)  "To state a claim under 18 U.S.C. § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007) (quoting Sedima, S.P.R.L. v. Imprex Co., 473 U.S. 479, 496 (1985)).  A claim under RICO must satisfy Rule 9(b)'s particularity requirements.

Plaintiffs have failed to plead the existence of an associated-in-fact enterprise.  RICO defines the term "enterprise" to include (1) "any individual, partnership, corporation, association, or other legal entity," and (2) "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  "[E]stablishing the existence of an associated-in-fact enterprise requires proof (1) of an ongoing organization, formal or informal, and (2) that the various associates function as a continuing unit." Chang v. Chen, 80 F.3d 1293, 1297 (9th Cir.1996) (citing United States v. Turkette, 452 U.S. 576, 583 (1981)).  Additionally, in order to establish liability under § 1962, one must allege and prove "the existence of two distinct entities: (1) a "person"; and (2) an "enterprise" that is not simply the same "person" referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001.)  Here, Plaintiffs allege that McCoy participated in an enterprise "commonly known as GLASS HOUSE and/or JVSR, or an unknown yet undetermined Association." (FAC ¶ 36.)  Plaintiffs have not provided sufficient details to identify the alleged "co-venturing enterprise," or to establish that the "enterprise" and McCoy were two different entities, and not the same person.

Likewise, Plaintiffs failed to plead with sufficient particularity their allegations of McCoy's racketeering conduct. Plaintiffs allege that on or about April 2006, McCoy "seized and carried away Plaintiff's funds with the intent to retain such funds and permanently deprive Plaintiffs of the same." (FAC ¶ 37.) Plaintiffs also allege that McCoy made phone calls, sent email, and letters through the United States Mail to Plaintiff, making misrepresentations,

fraudulent statements, and false and deceptive communications with intent to deprive Plaintiffs of their money. (Id.) However, Plaintiffs fail to specify what the alleged fraudulent and deceptive statements were, or provide factual support for their contentions that these statements were allegedly illegal.

Plaintiffs also have not alleged sufficient facts to support a claim that Defendant engaged in a pattern of racketeering activity. A pattern requires at least two acts of racketeering activity. Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497 n.14 (1985) (citing 18 U.S.C. § 1961(5)). However, "while two acts are necessary, they may not be sufficient." (Id.) To constitute a pattern, the alleged racketeering acts must be related, and they must also "amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989). Here, Plaintiffs allege that McCoy "engaged in at least two incidents of unlawful predicate acts." (FAC ¶ 42.) While Plaintiffs recite the requisite elements to plead a RICO claim, they fail to support their allegations with sufficient facts. Plaintiffs' legally conclusory allegations that McCoy violated the RICO statute cannot survive a motion to dismiss. Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiffs' RICO claim.

**C. Unfair Competition Law**

Plaintiffs' third cause of action is for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, et seq. (FAC. ¶¶ 45-48.) The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code §17200. Under the UCL, conduct is deceptive or misleading if it is likely to deceive an ordinary consumer. Williams v. Gerber Products Co., 552 F.3d 924, 938 (9th Cir. 2008). In order to assert a claim under the UCL, a person must have ""has suffered injury in fact and has lost money or property as a result of such unfair competition." Cal. Bus. & Prof. Code §§17204 & 17535. Therefore, reliance is required to have standing to sue under the UCL. See Cattie v. Wal-Mart Stores, Inc., 504 F. Supp.2d 939, 947–49 (S.D. Cal. 2007) (holding reliance is required); Laster v. T-Mobile USA, Inc., 407 F. Supp.2d 1181,1194 (S.D. Cal. 2005) (same); Stickrath v. Globalstar, Inc., 527 F.

Supp.2d 992, 996 (N.D. Cal. 2007) (same).

Plaintiffs fail to state a claim against McCoy under the UCL. Plaintiffs allege that Defendants "used fraudulent representations in order to gain funds from Plaintiff for improper purposes . . . and . . . that Defendants' fraudulent acts and omissions are likely to deceive the public." (FAC ¶ 47.) These allegations are insufficient to state a claim against McCoy for a violation of the UCL. Plaintiff does not allege what unlawful, unfair, or fraudulent business acts or practices McCoy committed, and Plaintiffs fail to allege their reliance on alleged fraudulent representations. Plaintiff also does not sufficiently allege facts entitling him to relief under the UCL's fraudulent prong, as Plaintiff fails to plead fraudulent representations with particularity and makes no allegations concerning how members of the public are likely to be deceived by the alleged conduct. See Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008). Accordingly, the Court dismisses Plaintiffs' cause of action for a violation of the UCL against McCoy.

**D. Conversion, Misappropriation of Funds and Money Had and Received**

Plaintiffs' fourth cause of action is for conversion and misappropriation of funds. "The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." Mendoza v. Rast Produce Co., Inc., 140 Cal. App.4th 1395, 1405 (2006) (internal quotations omitted). Plaintiffs allege that McCoy retains "remittances on Plaintiffs' accounts, and other funds," and that McCoy's refusal to turn over remittances, accounts and funds constitutes conversion. (FAC ¶¶ 50-52.)

Plaintiffs fail to allege an actual interference with their ownership or right of possession. "Where plaintiff neither has title to the property alleged to have been converted, nor possession thereof, he cannot maintain an action for conversion." Fischer v. Machado, 50 Cal. App.4th 1069, 1072 (Ct. App. 1996) (citation omitted). Here, Plaintiffs have not established which specific property McCoy allegedly retained. If Plaintiffs are attempting to allege conversion of the JVSR accounts, then Plaintiffs have not established that they have the right to such accounts and revenue. The Court finds that Plaintiffs' pleadings are insufficient to state a

claim for conversion. Accordingly, the Court dismisses Plaintiffs' causes of action for conversion and misappropriation of funds against McCoy.

Plaintiffs' ninth cause of action is for money had and received. "The count for money had and received states in substance that the defendant is indebted to the plaintiff in a certain sum 'for money had and received by the defendant for the use of the plaintiff.'" 4 Witkin, Cal. Proc. (5th ed. 2008) Pleading, § 561, p. 688. "The foundation of an action for conversion on a money had and received count is the unjust enrichment of the wrongdoer, and in order for plaintiff to recover in such action she must show that a definite sum, to which she is justly entitled, has been received by defendant." Bastanchury v. Times-Mirror Co., 68 Cal. App.2d 217, 236 (Ct. App. 1945). Here, Plaintiffs allege that prior to approximately April 24, 2006, McCoy asked Plaintiffs for access to the JVSR merchant account, and thereafter "received said funds" (FAC ¶ 81.)

Plaintiffs failed to establish the elements of a claim for money had and received. First, Plaintiffs do not allege a definite sum that McCoy received from Plaintiffs. Furthermore, Plaintiffs have not alleged that they are justly entitled to the sums in the JVSR merchant account. Accordingly, the Court dismisses Plaintiffs' cause of action for money had and received against McCoy.

**E. Fraud and Negligent Misrepresentation**

Plaintiffs' sixths and seventh causes of action are for fraud and negligent misrepresentation. Under California law, the elements of fraud are "false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." Moore v. Brewster, 96 F.3d 1240, 1245 (9th Cir.1996) (quotations omitted). Under Federal Rule of Civil Procedure 9, a Plaintiff must plead fraud with particularity. "Rule 9(b)'s particularity requirement applies to state-law causes of action." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Id. at 1106 (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir.1997)). "'[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading

about a statement, and why it is false.'" Id. at 1106 (quoting Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.), 42 F.3d 1541, 1548 (9th Cir.1994)). "While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud" are not. Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989). Further, Rule 9(b) requires a plaintiff to attribute particular fraudulent statements or acts to individual defendants. Id.

"The elements of negligent misrepresentation are '(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.'" Nat'l Union Fire Ins. Co. v. Cambridge Integrated Servs. Group, Inc., 171 Cal. App. 4th 35, 50 (Ct. App. 2009) (citation omitted).

Plaintiffs fail to establish the elements of fraud or negligent misrepresentation. Although Plaintiffs allege that McCoy made "false statements," the alleged statements were made to the recipients of the JVSR emailing system, and not to the Plaintiffs. (FAC ¶ 66.) Plaintiffs also fail to allege that they relied on the alleged fraudulent statements. Accordingly, the Court dismisses Plaintiffs' causes of action for fraud and negligent misrepresentation against McCoy.

**F.  Libel and Slander**

Plaintiffs' tenth and eleventh causes of action are for libel and slander. (FAC ¶¶ 83-98.) California Civil Code section 45 defines libel as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. Under California Civil Code section 47, a privileged publication is one made "[i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." Cal. Civ. Code § 47.

"Slander is a false and unprivileged publication, orally uttered . . . which . . . (3) [t]ends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits; . . . or (5) which, by natural consequence, causes actual damage." Cal. Civ. Code § 46.

Under California law, the defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement. Okun v. Superior Court, 29 Cal.3d 442, 458 (1981). "General allegations of the defamatory statements" that do not identify the substance of what was said are insufficient. See Silicon Knights, Inc. v. Crystal Dynamics, Inc., 983 F. Supp. 1303, 1314 (N.D. Cal.1997) (holding that "the words constituting a libel or slander must be specifically identified, if not pleaded verbatim"). Here, Plaintiffs allege that McCoy "published statements to third parties ... in order to create hatred, contempt, ridicule and obloquy against Plaintiffs," and that the statements were "defamatory per se." Plaintiffs neither identify nor plead the substance of the alleged statements.

Plaintiffs' allegations are nothing more than "formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). As such, and absent further factual enhancement, they cannot survive a motion to dismiss. Accordingly, the Court dismisses Plaintiffs' causes of action for slander and libel.

**G. Invasion of Privacy**

The elements of the tort of invasion of privacy through public disclosure of private facts are: "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." Moreno v. Hanford Sentinel, Inc., 172 Cal. App.4th 1125, 1129-30 (Ct. App. 2009) (internal quotations omitted). A matter that is already public or that has previously become part of the public domain is not private. (Id.)

Plaintiffs make a conclusory allegation that McCoy "invaded Plaintiffs' privacy, by publishing and disseminating private and confidential facts and information in order to cause

1  harm and injury to Plaintiffs." (FAC ¶ 100.)  The FAC does not state what private facts were
2  allegedly disclosed by McCoy, or what expectation of privacy Plaintiffs had regarding the
3  allegedly disclosed facts.  Absent additional facts, Plaintiffs fail to sufficiently plead a cause
4  of action for invasion of privacy.  Accordingly, the Court dismisses Plaintiff's invasion of
5  privacy claim.

6  **H.  Trademark Infringement, False Designation, and Dilution**

7  Plaintiffs allege Defendant infringed Plaintiffs' common law and statutory trademark
8  rights.  To prevail on a claim of trademark infringement or unfair competition under the
9  Lanham Act, the "ultimate test" is "whether the public is likely to be deceived or confused by
10 the similarity of the marks." Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175 (9th
11 Cir.1988) (quoting New West Corp. v. NYM Co. of California, 595 F.2d 1194, 1201 (9th
12 Cir.1979)).  The "likelihood of confusion" test also applies to trademark infringement claims
13 under California law.  See M2 Software, Inc. v. Madacy Entertainment, 421 F.3d 1073, 1080
14 (9th Cir.2005).

15 Plaintiffs also allege a claim of dilution against McCoy.  (FAC ¶¶ 118-121.)  A federal
16 dilution claim is "'a cause of action invented and reserved for a select class of marks--those
17 marks with such powerful consumer associations that even non-competing uses can impinge
18 their value.'" Perfumebay.com Inc. v. EBAY, Inc., 506 F.3d 1165, 1179-80 (9th Cir. 2007)
19 (quoting Thane Int'l, Inc. v. Trek Bicycle Corp., 305 F.3d 894, 907 (9th Cir.2002)).
20 California's dilution cause of action is similar, and it provides relief if "the plaintiff can
21 demonstrate a likelihood of injury to business reputation or of dilution of the distinctive quality
22 of a mark notwithstanding the absence of competition between the parties or the absence of
23 confusion as to the source of goods or services." (Id. at 1180.)  "The mark used by the alleged
24 diluter must be identical, or nearly identical, to the protected mark for a dilution claim to
25 succeed." (Id.) (quoting Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002, 1011
26 (9th Cir.2004)).

27 Finally, Plaintiffs bring a false designation claim against McCoy.  (FAC ¶¶ 113-117.)
28 A claim for false designation of origin is one in the nature of a claim for infringement of an

unregistered mark.  15 U.S.C. § 1125(a).  To prove a false designation of origin claim, a plaintiff must show that defendant (1) uses a false designation of origin; (2) in interstate commerce; (3) and in connection with goods or services; (4) when the designation is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) plaintiff has been or is likely to be damaged by these acts.  5 McCarthy on Trademarks and Unfair Competition, § 27:13 (4th ed.).

Plaintiffs allege that on or about December 1995, they adopted and used the trademark "Journal or Vertebral Subluxation Research" and "JVSR." (FAC ¶ 106.)  Plaintiffs also allege that on or about April 1, 2000, JVSR, through Rondberg, engaged McCoy "to act as the JVSR editor." (FAC ¶ 18.)  Plaintiffs fail to allege that McCoy at any time used a mark similar to Plaintiffs' in interstate commerce, or otherwise, and that the public was confused by similarity of the JVSR and another mark.  Plaintiffs failed to plead sufficient facts to support the elements of trademark infringement, trademark dilution, or false designation.  Accordingly, the Court dismisses Plaintiffs' thirteenth, fourteenth, and fifteenth causes of action.

**I. Intentional and Negligent Interference with Business Relationships**

Plaintiffs' sixteenth cause of action is for intentional interference with business relationships.  (FAC ¶¶ 122-127.)  The elements of the tort of intentional interference with prospective economic advantage are as follows: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional wrongful acts on the defendant's part designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's acts." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153 (2003) (internal quotations omitted).  Plaintiff must plead that "the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.'" Id. (citing Della Penna v. Toyota Motor Sales, U.S.A., Inc.,11 Cal. 4th 376, 393 (1995).

Plaintiffs allege that they have an advantageous business relationship with the JVSR

subscribers. (FAC ¶ 123.) However, Plaintiffs fail to allege any facts supporting their claim of actual disruption of this relationship by any of McCoy's alleged acts. The FAC provides merely a "formulaic recitation" of the elements of intentional interference with business relationships. The Court concludes that Plaintiffs have not made out a claim for intentional interference with business relationships.

Plaintiffs' seventeenth cause of action is for negligent interference with business relationships. (FAC ¶¶ 128-131.) The elements for a cause of action for negligent interference with prospective economic advantage are: (1) an economic relationship existed between the plaintiff and a third party that contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) that negligence caused damage to the plaintiff in that the relationship was actually interfered with or disrupted and the plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship. See North American Chemical Co. v. Superior Court, 59 Cal. App. 4th 764, 787 (1997).

Plaintiffs allege they enjoy an advantageous business relationship with their "Clients, and Chiropractic Community." (Id. ¶ 129.) Once again, Plaintiffs fail to allege any facts supporting their claim of actual disruption of their relationship with their client, or the Chiropractic community, by any of McCoy's alleged acts. Accordingly, the Court dismisses Plaintiffs' causes of action for intentional and negligent interference with business relationships.

///
///
///
///
///

**Conclusion**

For the reasons set forth above, the Court GRANTS Defendant McCoy's motion to dismiss the First Amended Complaint. Plaintiffs may file an amended complaint curing the noted deficiencies within thirty (30) days of the date of this Order.

**IT IS SO ORDERED.**

DATED: September 21, 2009

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT