1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11
12
13

TERRY RONDBERG, D.C. and THE
CHIROPRACTIC JOURNAL AND
JOURNAL OF VERTEBRAL
SUBLUXATION,

                                        Plaintiffs,

14      vs.

15
16

MATHEW MCCOY a.k.a. MATT
MCCOY a.k.a. DR. MATT MCCOY and
DOES 1 to 100, inclusive,

17                                        Defendants.

CASE NO. 09-CV-1672-H (CAB)

**ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT MCCOY'S
MOTION TO DISMISS FAC**

18

19      On October 21, 2009, Plaintiffs Terry Rondberg, D.C. and the Chiropractic Journal and

20  Journal of Vertebral Subluxation filed their First Amended Complaint ("FAC") against

21  Defendants Matthew McCoy and Does 1 through 100. (Doc. No. 8.)  On November 2, 2009,

22  Defendant Matthew McCoy filed his motion to dismiss the FAC. (Doc. No. 10.)  The Court

23  submitted the motion on parties' papers on December 3, 2009. (Doc. No. 11.)  On December

24  7, 2009, Plaintiffs filed their response in opposition to the motion to dismiss. (Doc. No. 12.)

25  On December 14, 2009, Defendant Matthew McCoy filed his reply. (Doc. No. 13.)  For the

26  reasons below, the Court GRANTS in part and DENIES in part Defendant Matthew McCoy's

27  motion.

28  ///

**<u>Background</u>**

On March 4, 2009, Plaintiffs Terry Rondberg, D.C. and the Chiropractic Journal and Journal of Vertebral Subluxation ("Plaintiffs") filed their First Amended Complaint ("FAC") against Defendants Matthew McCoy ("McCoy" or "Defendant") and Does 1 through 100 in the San Diego Superior Court. (Doc. No. 1.)  On August 3, 2009, Defendant McCoy removed the action to this Court pursuant to 28 U.S.C. § 1441(b), because this Court has original jurisdiction over the RICO violation claim.[1]  (<u>Id</u>.)  On August 10, 2009, Defendant filed a motion to dismiss the FAC pursuant to the Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for a more definite statement of the claims pursuant to the Federal Rule of Civil Procedure 12(e). (Doc. No. 3.)  On September 21, 2009, the Court granted Defendant's motion to dismiss Plaintiffs' FAC. (Doc. No. 7.)  On October 21, 2009, Plaintiffs filed their amended complaint, entitled "First Amended Complaint."[2]  (Doc. No. 8.)  On November 2, 2009, Defendant Matthew McCoy filed his motion to dismiss the FAC. (Doc. No. 10.)  The Court submitted the motion on parties' papers on December 3, 2009. (Doc. No. 11.)  On December 7, 2009, Plaintiffs filed their response in opposition to the motion to dismiss. (Doc. No. 12.)  On December 14, 2009, Defendant McCoy filed his reply. (Doc. No. 13.)

In the FAC, Plaintiffs re-allege that Plaintiff Terry Rondberg, D.C. ("Rondberg") and Cynthia Rondberg are owners and sole shareholders of The Chiropractic Journal, Inc. (FAC ¶ 12.)  Plaintiffs allege that Rondberg founded the Journal of Vertebral Subluxation Research ("JVSR"), a peer-reviewed scientific journal, as a division of The Chiropractic Journal. (FAC ¶ 14.)  Plaintiffs allege that JVSR operated a website, www.jvsr.com, and received revenue from advertising on the internet and through its publications. (<u>Id</u>. ¶¶ 16, 20.)  Plaintiffs allege that on or about April 1, 2000, JVSR, through Rondberg,

hired Defendant, Mathew [sic] McCoy, D.C. to act as the JVSR editor, as an

---

[1] Additionally, Defendant claims that this Court has original jurisdiction based on diversity, 28 U.S.C. § 1332. (Doc. No. 1 at 2.)

[2] The Court notes that although Plaintiffs' amended complaint is entitled "First Amended Complaint," Plaintiffs' First Amended Complaint was dismissed in the Court's September 21, 2009 order. (<u>See</u> Doc. No. 7.)

1        independent contractor.  The employment agreement was an oral agreement that

2        Mr. McCoy perform editorial services for the JVSR and to allow for Dr.

3        Rondberg, Mr. McCoy, Terry Pochert, and Marty Marsh to collaborate on the

4        JVSR and equally share the profit.

5  (FAC ¶ 18.)  Plaintiffs allege that in return for the editorial services Defendant McCoy was to

6  perform, he was to be compensated "in equal proportions of profits to Dr. Rondberg, Dr.

7  Marsh, and Dr. Pochart."  (Id. ¶ 36.)  Plaintiffs allege that McCoy breached the agreement by

8  "failing to provide editorial services."  (Id. ¶ 38.)

9        Plaintiffs further allege that JVSR's revenue from credit card merchant accounts was

10  processed through the Chiropractic Journal until on or about until April 24, 2006, when

11  Defendant McCoy ("McCoy") reorganized the merchant account to direct charges to JVSR,

12  as part of a scheme to divert JVSR property and money for McCoy's personal benefit.  (Id. ¶¶

13  22-23.)  Plaintiffs allege that since mid-2008, McCoy assumed control of the JVSR's

14  operations and engaged in a "series of unauthorized, un-consented and illegal actions,"

15  including: changing the registration of the JVSR's domain name to himself, "absconding and

16  diverting funds of JVSR" for his personal benefit, excluding the Chiropractic Journal and

17  Rondberg from JVSR operations, falsely disseminating statements that McCoy is the owner

18  of JVSR, undermining the operation of JVSR, promoting and operating own projects and

19  business entities on JVSR's website, blocking the Chiropractic Journal and Rondberg from

20  accessing JVSR's books, records, and bank accounts, holding oneself out as the owner/sole

21  director/officer of JVSR, contacting JVSR customers to divert them to bank accounts

22  established by McCoy, abetting unnamed co-conspirators to carry out a common plan to

23  defraud Plaintiffs, engaging in a campaign to disparage and destroy Rondberg and diminish

24  his reputation in the chiropractic community, establishing an enterprise calculated to engage

25  in illegal conduct, including mail fraud and embezzlement, to the detriment of the Plaintiffs,

26  intentionally publishing false statements, private facts and disparaging comments concerning

27  Plaintiffs.  (FAC ¶ 25.) Plaintiffs allege that McCoy engaged in malicious and illegal conduct

28  to undermine Plaintiffs' operations and affiliations within the chiropractic community,

misappropriated JVSR's trade secrets and customer lists for his own use, and engaged in competitive conduct against JVSR and Plaintiffs.  (Id.)  Plaintiffs allege that McCoy hijacked JVSR's website, internet operations, merchant accounts, and internet-related operations.  (Id.)  Plaintiffs allege that McCoy used JVSR's resources to operate a personal business known as "Glass Houses."  (Id.)  Plaintiffs allege that McCoy intentionally disseminated false, offensive, private and confidential information and statements in order to cast Plaintiffs in a false light. (Id.)

Plaintiffs also allege that since approximately December 2008, McCoy and Does 1 through 50 engaged in a pattern and scheme to embezzle and convert the funds and property of JVSR and the Chiropractic Journal.  (FAC ¶ 26.)  Finally, Plaintiffs allege that they have suffered damages in an amount to be determined, but believed to be in excess of $1 million, as a result of McCoy's and Does' 1 through 50, common plan, scheme, defamation, and illegal conduct.  (Id. ¶ 32.)

## Discussion

## I.  Motion to Dismiss Pursuant to 12(b)(6)

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  Navarro v. Black, 250 F.3d 729, 731 (9th Cir. 2001).  A complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) to evade dismissal under a Rule 12(b)(6) motion.  Porter v. Jones, 319 F.3d 483, 494 (9th Cir. 2003).  Rule 8(a)(2) requires that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The function of this pleading requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47 (1957).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A complaint does not "suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'" <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009) (<u>quoting id.</u> at 556).   To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), Plaintiff's complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>al-Kidd v. Ashcroft,</u> 580 F.3d 949, 956 (9th Cir. 2009) (quotations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  <u>Twombly</u>, 550 U.S. at 555 (citing 5 <u>C. Wright & A. Miller, Federal Practice and Procedure</u> § 1216, pp. 235–36 (3d ed. 2004)).   "All allegations of material fact are taken as true and construed in the light most favorable to plaintiff.  However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." <u>Epstein v. Wash. Energy Co.</u>, 83 F.3d 1136, 1140 (9th Cir.1996); <u>see also</u> <u>Twombly</u>, 550 U.S. at 555-56.

        "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir.1990).  The court may, however, consider the contents of documents specifically referred to and incorporated into the complaint.  <u>Branch v. Tunnell</u>, 14 F.3d 449, 454 (9th Cir.1994).

**A.  Breach of Contract and Accounting**

        Plaintiffs' first cause of action is for breach of contract.  (FAC ¶¶ 35-41.)  In California, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." <u>CDF Firefighters v. Maldonado</u>, 158 Cal. App.4th 1226, 1239 (2008).  The FAC alleges that:

        On or about April 1, 2000, Defendant McCoy entered into an oral agreement
        with Plaintiffs to provide editorial services for the JVSR and be compensated in
        return in equal proportions of profits to Dr. Rondberg, Dr. Marsh, and Dr.
        Pochart.

(FAC ¶ 36.)  In another paragraph, the FAC alleges that:

        On or about April 1, 2000, JVSR, through Rondberg, hired Defendant, Mathew

1    [sic] McCoy, D.C. to act as the JVSR editor, as an independent contractor.  The

2    employment agreement was an oral agreement that Mr. McCoy perform editorial

3    services for the JVSR and to allow for Dr. Rondberg, Mr. McCoy, Terry

4    Pochert, and Marty Marsh to collaborate on the JVSR and equally share the

5    profit.

6   (FAC ¶ 18.)  The FAC also alleges that McCoy was responsible for "collecting and accounting

7   for subscriber and advertising revenue."  (FAC ¶ 21.)  The FAC alleges that Plaintiffs

8   performed their obligations "under all transactions and agreements ... incorporated herein by

9   reference," and that Defendant "materially breached the aforementioned agreements, as

10  detailed above, and by failing to provide editorial services in breach of this agreement." (FAC

11  ¶¶ 36-38.)  The FAC alleges that as a result of the breaches by Defendants, "Plaintiff has

12  suffered damage in an amount to be proven at trial." (FAC ¶ 41.)  The Court concludes that

13  the FAC states a claim for breach of contract.  Accordingly, the Court DENIES Defendant's

14  motion to dismiss Plaintiffs' breach of contract claim.

15      Plaintiffs' eighth cause of action is for accounting.  (FAC ¶¶ 89-92.)  A cause of action

16  for an accounting requires a showing that a relationship exists between the plaintiff and

17  defendant that requires an accounting, and that some balance is due the plaintiff that can only

18  be ascertained by an accounting. Teselle v. McLoughlin, 173 Cal. App.4th 156, 179 (Ct. App.

19  2009); 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 819, p. 236.  While a fiduciary

20  relationship between the parties is not required to state a cause of action for accounting,

21  plaintiff must allege some relationship that requires an accounting.  (Id.)  Here, the FAC

22  alleges that Defendant entered into an oral contract and was responsible for "collecting and

23  accounting for subscriber and advertising revenue." (FAC ¶¶ 18, 21.)  The FAC also alleges

24  that, as a result of the "conversion and/or unlawful acts," Defendants received all or a portion

25  of the money due to Plaintiffs.  (Id. ¶ 91.)  Specifically, the FAC alleges that Defendants

26  engaged in a scheme to divert JVSR money for their own personal benefit.  (Id. ¶ 24.)  The

27  FAC alleges that Defendants continue "to the present time to collect fees rightfully due to

28  Plaintiff." (Id. ¶ 92.)  Plaintiffs allege that the exact amount owed to them by Defendants is

1  unknown, because it was kept by Defendants in "complicated and disputed accounts."  (Id. ¶
2  91.)  Because the Court concludes that the FAC sufficiently states a cause of action for
3  accounting, the Court DENIES Defendant McCoy's motion to dismiss Plaintiffs' cause of
4  action for accounting.

5  **B. Breach of Fiduciary Duty**

6      Plaintiffs' fifth cause of action is for breach of fiduciary duty.  (FAC ¶¶ 67-72.)  The
7  elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary
8  relationship, (2) its breach, and (3) damage proximately caused by that breach.  Amtower v.
9  Photon Dynamics, Inc., 158 Cal. App.4th 1582, 1599 (2008).  In order to be charged with a
10  fiduciary obligation, a person must either knowingly undertake to act on behalf and for the
11  benefit of another, or enter into a relationship which imposes that undertaking as a matter of
12  law.  Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App.4th 226, 246 (Ct.
13  App. 2007).  "Whether a fiduciary duty exists is generally a question of law."  Id. (citation
14  omitted).  "Whether the defendant breached that duty towards the plaintiff is a question of
15  fact."  Id. (citation omitted).

16      The FAC does not allege facts giving rise to fiduciary duty between the parties.  The
17  FAC does not  allege that Defendant "knowingly" undertook the obligations of a fiduciary.
18  See Apollo Capital Fund, 158 Cal. App.4th at 246.  Nor does the FAC allege that Defendant
19  entered into the type of relationship "which imposes that undertaking [fiduciary obligation to
20  act on behalf of and for the benefit of another] as a matter of law."  Id.  The allegations that
21  Defendant "agreed to perform and act as an editor for JVSR in exchange for compensation"
22  or that Defendant was hired "to act as the JVSR editor, as an independent contractor" do not
23  give rise to fiduciary duties.  See City of Hope Nat'l Med. Ctr v. Genentech, Inc., 43 Cal.4th
24  375, 386 (2008) (stating as examples of relationships giving rise to fiduciary duties a joint
25  venture, a partnership, or an agency).  The Court concludes that Plaintiffs fail to state a claim
26  for breach of fiduciary duty and GRANTS Defendant's motion to dismiss the cause of action
27  for breach of fiduciary duty.
28  ///

**C. RICO**

Plaintiffs' second cause of action is for violations of RICO, 18 U.S.C. § 1961 et seq. (FAC ¶¶ 42-52.) Plaintiffs allege that McCoy, "acting in unison with other and on behalf of the other co-venturing Defendants," violated 18 U.S.C. § 1962. (FAC ¶ 43.) "To state a claim under 18 U.S.C. § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007) (quoting Sedima, S.P.R.L. v. Imprex Co., 473 U.S. 479, 496 (1985)). A claim under RICO must satisfy Rule 9(b)'s particularity requirements.

Plaintiffs have failed to plead the existence of an associated-in-fact enterprise. RICO defines the term "enterprise" to include (1) "any individual, partnership, corporation, association, or other legal entity," and (2) "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "[E]stablishing the existence of an associated-in-fact enterprise requires proof (1) of an ongoing organization, formal or informal, and (2) that the various associates function as a continuing unit." Chang v. Chen, 80 F.3d 1293, 1297 (9th Cir.1996) (citing United States v. Turkette, 452 U.S. 576, 583 (1981)). Additionally, in order to establish liability under § 1962, one must allege and prove "the existence of two distinct entities: (1) a "person"; and (2) an "enterprise" that is not simply the same "person" referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001). The FAC alleges that McCoy participated in an enterprise "commonly known as GLASS HOUSE and/or JVSR, or an unknown yet undetermined Association." (FAC ¶ 44.) The FAC also alleges that Defendant McCoy used JVSR's website to operate a "personal business known as Glass Houses." (Id. ¶ 25.) Plaintiffs have not provided sufficient details to identify the alleged "co-venturing enterprise," or to establish that the "enterprise" and McCoy were two different entities, and not the same person. While Plaintiffs recite the requisite elements to plead a RICO claim, they fail to support their allegations with sufficient facts. Plaintiffs' legally conclusory allegations that McCoy violated the RICO statute cannot survive a motion to dismiss. Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiffs' RICO claim.

**D. Unfair Competition Law**

Plaintiffs' third cause of action is for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, et seq.  (FAC. ¶¶ 53-58.)  The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code §17200.  Under the UCL, conduct is deceptive or misleading if it is likely to deceive an ordinary consumer.  Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008).  In order to assert a claim under the UCL, a person must have "suffered injury in fact and has lost money or property as a result of such unfair competition."  Cal. Bus. & Prof. Code §§17204 & 17535.  Therefore, reliance is required to have standing to sue under the UCL.  See Cattie v. Wal-Mart Stores, Inc., 504 F. Supp.2d 939, 947–49 (S.D. Cal. 2007) (holding reliance is required); Laster v. T-Mobile USA, Inc., 407 F. Supp.2d 1181,1194 (S.D. Cal. 2005) (same); Stickrath v. Globalstar, Inc., 527 F. Supp.2d 992, 996 (N.D. Cal. 2007) (same).

Plaintiffs allege that Defendants "promoted its own products on the JVSR website without the consent of the JVSR or Plaintiffs."  (FAC ¶ 54.)  The FAC alleges that the public "will be deceived by the JVSR website because due to Defendants' takeover, the proper owner of the journal, Plaintiffs, are not mentioned."  (Id. ¶ 55.)  Plaintiffs also allege that they suffered a 90% loss of subscribers as a result of Defendants' takeover of the JVSR website. (Id. ¶ 58.)  These allegations, combined with the other allegations in the FAC,  are sufficient to state a claim against McCoy for a violation of the UCL.  Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiffs' cause of action for a violation of the UCL against McCoy.

**E. Conversion and Misappropriation of Funds**

Plaintiffs' fourth cause of action is for conversion and misappropriation of funds. (FAC ¶¶ 59-66.)  "The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."  Mendoza v. Rast Produce Co., Inc., 140 Cal. App.4th 1395, 1405 (2006) (internal quotations omitted).  Plaintiffs allege that the JVSR and Chiropractic

1    Journal are owned by Dr. Rondberg, and that the JVSR website "has been hijacked by

2    Defendants." (FAC ¶ 62.) Plaintiffs also allege that Defendants retain "remittances on

3    Plaintiffs' accounts, and other funds," and that Defendants' refusal to turn over remittances,

4    accounts and funds constitutes conversion. (FAC ¶¶ 60-63.) The Court concludes that

5    Plaintiffs' pleadings state a claim for conversion. Accordingly, the Court DENIES

6    Defendant's motion to dismiss Plaintiffs' cause of action for conversion and misappropriation

7    of funds against McCoy.

8    **F.  Money Had and Received**

9         Plaintiffs' ninth cause of action is for money had and received. (FAC ¶¶ 93-95.) "The

10   count for money had and received states in substance that the defendant is indebted to the

11   plaintiff in a certain sum 'for money had and received by the defendant for the use of the

12   plaintiff.'" 4 Witkin, Cal. Proc. (5th ed. 2008) Pleading, § 561, p. 688. "The foundation of an

13   action for conversion on a money had and received count is the unjust enrichment of the

14   wrongdoer, and in order for plaintiff to recover in such action she must show that a definite

15   sum, to which she is justly entitled, has been received by defendant." <u>Bastanchury v.</u>

16   <u>Times-Mirror Co.</u>, 68 Cal. App.2d 217, 236 (Ct. App. 1945). Here, Plaintiffs allege that prior

17   to approximately April 24, 2006, McCoy asked Plaintiffs for access to the JVSR merchant

18   account, and thereafter "received said funds" (FAC ¶ 81.) The FAC fails to state a claim for

19   money had and received, because Plaintiffs do not allege a definite sum that McCoy received

20   from Plaintiffs. Accordingly, the Court GRANTS Defendant's motion and dismisses

21   Plaintiffs' cause of action for money had and received against McCoy.

22   **G.  Fraud and Negligent Misrepresentation**

23        Plaintiffs' sixths and seventh causes of action are for fraud and negligent

24   misrepresentation. Under California law, the elements of fraud are "false representation,

25   knowledge of its falsity, intent to defraud, justifiable reliance, and damages." <u>Moore v.</u>

26   <u>Brewster</u>, 96 F.3d 1240, 1245 (9th Cir.1996) (superceded by statute on other grounds)

27   (quotations omitted). Under Federal Rule of Civil Procedure 9, a Plaintiff must plead fraud

28   with particularity. "Rule 9(b)'s particularity requirement applies to state-law causes of action."

1  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003).  "Averments of fraud

2  must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."

3  Id. at 1106 (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir.1997)).  "'[A] plaintiff must

4  set forth more than the neutral facts necessary to identify the transaction.  The plaintiff must

5  set forth what is false or misleading about a statement, and why it is false.'"  Id. at 1106

6  (quoting Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.), 42 F.3d 1541, 1548 (9th

7  Cir.1994)).  "While statements of the time, place and nature of the alleged fraudulent activities

8  are sufficient, mere conclusory allegations of fraud" are not.  Moore v. Kayport Package

9  Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989).  Further, Rule 9(b) requires a plaintiff to

10  attribute particular fraudulent statements or acts to individual defendants.  Id.

11          "The elements of negligent misrepresentation are '(1) the misrepresentation of a past

12  or existing material fact, (2) without reasonable ground for believing it to be true, (3) with

13  intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the

14  misrepresentation, and (5) resulting damage.'"  Nat'l Union Fire Ins. Co. v. Cambridge

15  Integrated Servs. Group, Inc., 171 Cal. App. 4th 35, 50 (Ct. App. 2009) (citation omitted).

16          Plaintiffs fail to establish the elements of fraud or negligent misrepresentation.  The

17  FAC alleges that McCoy sent a mass email to the JVSR subscribers, "stating his positions

18  regarding his relationship with Dr. Rondberg," specifically, that McCoy "disassociated"

19  himself from "Dr. Rondberg, the World Chiropractic Alliance and Research and Clinical

20  Science." (FAC ¶¶ 77-78.) Plaintiffs allege that McCoy made these allegedly false statements

21  to the recipients of the JVSR emailing system, and not to the Plaintiffs.  (Id.)  Plaintiffs also

22  allege that on July 11, 2008, McCoy sent an email to Rondberg, in which he stated: "You do

23  not have the authority to fire me as the Editor of JVSR, or anything else for that matter."  (Id.

24  ¶ 78.)  Finally, the FAC alleges that "Defendants made the following false statements: 'I am

25  a partner of JVSR.'  'I am an owner of JVSR.'" (FAC ¶ 85.)  Plaintiffs fail to allege how they

26  relied on the allegedly fraudulent statements made to Rondberg, or that they in fact relied on

27  them.  The Court concludes that the FAC, as amended, fails to state causes of action for fraud

28  or negligent representation.  Accordingly, the Court GRANTS Defendant's motion and

1    dismisses Plaintiffs' causes of action for fraud and negligent misrepresentation against McCoy.

2    **H. Libel and Slander**

3        Plaintiffs' tenth and eleventh causes of action are for libel and slander.  (FAC ¶¶ 96-

4    103, 104-111.)  California Civil Code section 45 defines libel as "a false and unprivileged

5    publication by writing, printing, picture, effigy, or other fixed representation to the eye, which

6    exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be

7    shunned or avoided, or which has a tendency to injure him in his occupation."  Cal. Civ. Code

8    § 45.  Under California Civil Code section 47, a privileged publication is one made "[i]n a

9    communication, without malice, to a person interested therein, (1) by one who is also

10   interested, or (2) by one who stands in such a relation to the person interested as to afford a

11   reasonable ground for supposing the motive for the communication to be innocent, or (3) who

12   is requested by the person interested to give the information."  Cal. Civ. Code § 47.

13       "Slander is a false and unprivileged publication, orally uttered . . . which . . . (3) [t]ends

14   directly to injure him in respect to his office, profession, trade or business, either by imputing

15   to him general disqualification in those respects which the office or other occupation peculiarly

16   requires, or by imputing something with reference to his office, profession, trade, or business

17   that has a natural tendency to lessen its profits; . . . or (5) which, by natural consequence,

18   causes actual damage."  Cal. Civ. Code § 46.

19       Under California law, the defamatory statement must be specifically identified, and the

20   plaintiff must plead the substance of the statement.  <u>Okun v. Superior Court</u>, 29 Cal.3d 442,

21   458 (1981).  "General allegations of the defamatory statements" that do not identify the

22   substance of what was said are insufficient.  <u>See Silicon Knights, Inc. v. Crystal Dynamics,</u>

23   <u>Inc.</u>, 983 F. Supp. 1303, 1314 (N.D. Cal.1997) (holding that "the words constituting a libel or

24   slander must be specifically identified, if not pleaded verbatim").  Here, Plaintiffs allege that

25   McCoy published the following statements to Plaintiffs and third parties: "I am a partner of

26   JVSR."  "I am an owner of JVSR," in order to create "hatred, contempt, ridicule and obloquy

27   against Plaintiffs."  (FAC ¶¶ 97, 99, 105.)  These alleged statements, however, do not refer to

28   Plaintiffs, and thus would not have a tendency to injure Plaintiffs.  In their opposition,

1   Plaintiffs rely on <u>Scott v. Solano County Health & Soc. Servs Dept.</u>, 459 F. Supp.2d 959 (E.D.

2   Cal. 2006), arguing that specific defamatory statement need not be pleaded to survive a motion

3   to dismiss.  (Doc. No. 12 at 15.)  In that case, plaintiff alleged that defendants "published false

4   information about plaintiff's performance and falsely accused plaintiff of dishonesty and lack

5   of integrity."  <u>Scott</u>, 459 F. Supp.2d at 973.  The court denied defendants' motion to dismiss

6   after concluding that "[i]t is clear that plaintiff complains about statements allegedly made

7   about her performance at work and her character."  <u>Id.</u> (emphasis added).  The <u>Scott</u> case is

8   inapposite, because McCoy's alleged statements here do not expose Plaintiffs to hatred,

9   contempt, ridicule, or obloquy.  Plaintiffs' allegations, as amended, cannot survive a motion

10  to dismiss.  Accordingly, the Court GRANTS Defendant's motion and dismisses Plaintiffs'

11  causes of action for slander and libel.

12  **I. Invasion of Privacy**

13          Plaintiffs' eleventh cause of action is for invasion of privacy.  (FAC ¶¶ 112-117.)  The

14  elements of the tort of invasion of privacy through public disclosure of private facts are: "(1)

15  public disclosure (2) of a private fact (3) which would be offensive and objectionable to the

16  reasonable person and (4) which is not of legitimate public concern."  <u>Moreno v. Hanford</u>

17  <u>Sentinel, Inc.</u>, 172 Cal. App.4th 1125, 1129-30 (Ct. App. 2009) (internal quotations omitted).

18  A matter that is already public or that has previously become part of the public domain is not

19  private.  (<u>Id.</u>)

20          Plaintiffs make a conclusory allegation that McCoy "invaded Plaintiffs' privacy, by

21  publishing and disseminating private and confidential facts and information in order to cause

22  harm and injury to Plaintiffs."  (FAC ¶ 113.)  The FAC does not state what private facts were

23  allegedly disclosed by McCoy, or what expectation of privacy Plaintiffs had regarding the

24  allegedly disclosed facts.  The Court previously observed that absent additional facts, Plaintiffs

25  did not state a cause of action for invasion of privacy.  (Doc. No. 7 at 12.)  Because Plaintiffs'

26  amended pleading does not state additional facts, the Court GRANTS Defendant's motion and

27  dismisses Plaintiff's invasion of privacy claim.

28  ///

**J.  Trademark Infringement, False Designation, and Dilution**

Plaintiffs allege Defendant infringed Plaintiffs' common law and statutory trademark rights.  (FAC ¶¶ 118-125.)  To prevail on a claim of trademark infringement or unfair competition under the Lanham Act, the "ultimate test" is "whether the public is likely to be deceived or confused by the similarity of the marks."  Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175 (9th Cir.1988) (quoting New West Corp. v. NYM Co. of California, 595 F.2d 1194, 1201 (9th Cir.1979)).  The "likelihood of confusion" test also applies to trademark infringement claims under California law.  See M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1080 (9th Cir.2005).  Courts determine the likelihood of confusion by balancing the following factors: (1) strength of the plaintiff's mark; (2) similarity between the two marks; (3) proximity of the goods; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchasers; (7) defendant's intent in selecting his mark; and (8) likelihood of expansion of product lines.  Mallard Creek Indus., Inc. v. Morgan, 56 Cal. App.4th 426, 435 (Ct. App. 1997) (citing AMF, Inc. v. Sleekcraft Boats,  599 F.2d 341, 348-349 (9th Cir. 1979)).

Plaintiffs also bring a false designation claim against McCoy.  (FAC ¶¶ 126-130.)  A claim for false designation of origin is one in the nature of a claim for infringement of an unregistered mark.  15 U.S.C. § 1125(a).  To prove a false designation of origin claim, a plaintiff must show that defendant (1) uses a false designation of origin; (2) in interstate commerce; (3) and in connection with goods or services; (4) when the designation is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) plaintiff has been or is likely to be damaged by these acts.  5 McCarthy on Trademarks and Unfair Competition, § 27:13 (4th ed.).

Finally, Plaintiffs allege a claim of dilution against McCoy.  (FAC ¶¶ 131-134.)  A federal dilution claim is "'a cause of action invented and reserved for a select class of marks--those marks with such powerful consumer associations that even non-competing uses can impinge their value.'"  Perfumebay.com Inc. v. EBAY, Inc., 506 F.3d 1165, 1179-80 (9th Cir.

1  2007) (quoting <u>Thane Int'l, Inc. v. Trek Bicycle Corp.</u>, 305 F.3d 894, 907 (9th Cir.2002)).

2  California's dilution cause of action is similar, and it provides relief if "the plaintiff can

3  demonstrate a likelihood of injury to business reputation or of dilution of the distinctive quality

4  of a mark notwithstanding the absence of competition between the parties or the absence of

5  confusion as to the source of goods or services." (<u>Id.</u> at 1180.)  "The mark used by the alleged

6  diluter must be identical, or nearly identical, to the protected mark for a dilution claim to

7  succeed." (<u>Id.</u>) (quoting  <u>Nissan Motor Co. v. Nissan Computer Corp.</u>, 378 F.3d 1002, 1011

8  (9th Cir.2004)).

9        Plaintiffs allege that on or about December 1995, they adopted and used the trademark

10  "Journal or Vertebral Subluxation Research" and "JVSR." (FAC ¶ 119.)  Plaintiffs allege that

11  Defendants advertized "products of Glass House on the JVSR website, deceiving and

12  confusing the public that JVSR supported promotion of such products or endorsed such

13  products or were connected to such products." (FAC ¶ 122.)  Plaintiffs allege that JVSR did

14  not receive funds for the advertising space, because Defendants "either failed to pay JVSR or

15  embezzled such funds." (<u>Id.</u>)  Plaintiffs also allege that "[a]ctual disruption has occurred

16  because 90% of the subscribers to JVSR cancelled their subscriptions" after Defendants

17  "hijacked the JVSR website." (<u>Id.</u> ¶ 123.)  Plaintiffs also allege that the public is "not aware

18  of who runs the JVSR and who the proper owner of the JVSR is." (<u>Id.</u> ¶¶ 129.)  The Court

19  concludes that Plaintiffs have alleged causes of action for common law and statutory trademark

20  infringement, false designation and dilution.  Accordingly, the Court DENIES Defendant's

21  motion to dismiss Plaintiffs' thirteenth, fourteenth, and fifteenth causes of action.

22  **K. Intentional and Negligent Interference with Business Relationships**

23        Plaintiffs' sixteenth cause of action is for intentional interference with business

24  relationships.  (FAC ¶¶ 135-140.)  The elements of the tort of intentional interference with

25  prospective economic advantage are as follows: "(1) an economic relationship between the

26  plaintiff and some third party, with the probability of future economic benefit to the plaintiff;

27  (2) the defendant's knowledge of the relationship; (3) intentional wrongful acts on the

28  defendant's part designed to disrupt the relationship; (4) actual disruption of the relationship;

and (5) economic harm to the plaintiff proximately caused by the defendant's acts." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153 (2003) (internal quotations omitted). Plaintiff must plead that "the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.'" Id. (citing Della Penna v. Toyota Motor Sales, U.S.A., Inc.,11 Cal. 4th 376, 393 (1995).

Plaintiffs' seventeenth cause of action is for negligent interference with business relationships. (FAC ¶¶ 141-144.) The elements of a cause of action for negligent interference with prospective economic advantage are: (1) an economic relationship existed between the plaintiff and a third party that contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) that negligence caused damage to the plaintiff in that the relationship was actually interfered with or disrupted and the plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship. See North American Chemical Co. v. Superior Court, 59 Cal. App. 4th 764, 787 (1997).

Plaintiffs allege that they have an advantageous business relationship with the JVSR subscribers. (FAC ¶ 136.) Plaintiffs also allege that Defendants disrupted Plaintiffs' current and future economic relationship with the JVSR subscribers, and that "90% of the subscribers cancelled their subscriptions during the time Defendants hijacked the JVSR website, resulting in monetary loss to Plaintiffs." (Id. ¶ 143.) The Court concludes that Plaintiffs allege sufficient facts to support their claim of actual disruption of their relationship with their subscribers as a result of Defendant McCoy's alleged acts. Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiffs' causes of action for intentional and negligent interference with business relationships.

///

///

**Conclusion**

For the reasons set forth above, the Court GRANTS Defendant's motion to dismiss the following causes of action:

- claim two; violation of RICO;
- claim five; breach of fiduciary duty;
- claim six; fraud;
- claim seven; negligent misrepresentation;
- claim nine; money had and received;
- claim ten; libel;
- claim eleven; slander;
- claim twelve; invasion of privacy;

and DENIES Defendant's motion to dismiss the following causes of action:

- claim one; breach of contract;
- claim three; violation of California's Unfair Competition Law;
- claim four; conversion and misappropriation of funds;
- claim eight; accounting;
- claim thirteen; common law and statutory trademark infringement;
- claim fourteen; false designation;
- claim fifteen; trademark dilution;
- claim sixteen; intentional interference with business relationships;
- claim seventeen; negligent interference with business relationships.

**IT IS SO ORDERED.**

DATED: December 21, 2009

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

09cv1672